# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHRISTIAN ASSEMBLY RIOS DE AGUA )
VIVA, )
           )
       Plaintiff, )
           )     No. 13 C 622
     v. )
           )     Judge Sara L. Ellis
CITY OF BURBANK, ILLINOIS )
           )
       Defendant. )

## OPINION AND ORDER

Looking for a new home for its growing congregation, Plaintiff Christian Assembly Rios de Agua Viva (the "Church") entered into a contract to purchase property in the City of Burbank, Illinois (the "City"). But to use that property for religious purposes, the Church needed to obtain a special use permit ("SUP"). After it was denied the SUP, the Church terminated the contract. It now seeks to recover damages from the City, claiming that the City's actions violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, the First and Fourteenth Amendments, the Illinois Constitution, and Illinois state laws.[1] The City seeks to dismiss the Church's federal claims. At this stage, the Church has alleged plausible claims under RLUIPA, the First Amendment, and the Equal Protection Clause. Its due process and class of one equal protection claims fail, however. Thus, the City's motion to dismiss [19] is granted in part and denied in part.

---

[1] The Church's state law claims were dismissed by the state court prior to this case being removed to federal court. The state claims are pleaded in the Third Amended Complaint solely for purposes of preserving the claims for potential appeal.

# BACKGROUND[2]

Having grown too large for its current facility in Chicago, Illinois, the Church began a search for more space to meet the needs of its growing congregation. The Church looked not only in Chicago but also in the suburbs, including Burbank, where the Church's pastor and at least twelve other member families currently live. After an approximately three and a half year search, the Church entered a contract in August 2010 to purchase property at 8100 South Parkside Avenue in Burbank for $900,000 from a bankruptcy estate. Pursuant to the contract, the Church paid $50,000 in an escrow money deposit.

The property is 3.9 acres and includes a 28,000 square foot building. It was previously home to a restaurant but had been vacant since October 2008. The property is surrounded by residences, the Stickney Township Administration Offices, Burbank Manor Presbyterian Church, and St. Albert the Great Catholic Church. The property and township offices are zoned "C" Commercial, while the homes are zoned residential.

Before December 15, 2010, Burbank's zoning code (the "Prior Ordinance") allowed non-religious assembly uses in "C" Commercial Districts. But churches were required to obtain SUPs to locate in "C" Commercial Districts. Thus, on October 7, 2010, the Church applied for a SUP with the City, which was to be heard during the Zoning, Planning, and Development Commission's ("Zoning Commission") regularly scheduled November 2, 2010 meeting. That meeting was cancelled due to the mid-term elections and rescheduled for December 7, 2010.

---

[2] The facts in the background section are taken from the Church's Third Amended Complaint and exhibits attached thereto and are presumed true for the purpose of resolving the City's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). The Court also takes judicial notice of matters of public record. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

On November 12, 2010, attorneys for the Church sent the City a letter, asserting that the Church met the requirements for a SUP but also that the Prior Ordinance violated RLUIPA and the Equal Protection Clause of the Fourteenth Amendment because the Prior Ordinance permitted non-religious assemblies, but not religious assemblies, as of right in "C" Commercial Districts. In response, on November 18, 2010, the City published a Legal Notice of Public Hearing, announcing a December 15, 2010 hearing to consider a proposed amendment to the Prior Ordinance. The Legal Notice read in part:

> Permitted and special uses in "C" Commercial Districts are proposed to be limited to commercial retail stores, service establishments, and professional offices that generate tax revenues, maintain the City's tax base, and allow for convenient locations for the public to shop, obtain services and conduct business. All tax exempt uses, residential uses and uses otherwise permitted or allowed as special use in a residential zoning classification are proposed to be prohibited.

Third Am. Compl. ¶ 18.

On December 7, 2010, the Zoning Commission held its initial hearing on the Church's SUP application. It unanimously recommended against the SUP and scheduled a hearing on the application before the City Council for January 19, 2011. The Church then filed a complaint seeking an injunction ordering the City to allow the Church to use the property as a church. On December 14, 2010, the day before the hearing on the proposed change to the Prior Ordinance, the state trial court denied the Church's motion for preliminary injunction. On December 15, 2010, the public hearing was held, but the public was precluded from asking questions regarding the proposed amendment. The City Council voted unanimously to approve the amendment, which applied retroactively to all pending zoning applications. The amendment (the "Amended Ordinance") allows churches, temples, and places of worship to be located in "R" Single Family Residence Districts, "R-1" Single Family Residence Districts, "R-2" Limited Multi-Family

Residence Districts, and "R-3" Multi-Family Residence Districts. Tax exempt uses, residential, uses, and uses otherwise permitted or allowed as special uses in residential zoning classifications are expressly prohibited in "C" Commercial Districts, however.

Despite the passage of the Amended Ordinance, the Church continued to pursue its SUP application. The Church expected to address its application at the January 19, 2011 City Council meeting by presenting witnesses but the City Council heard no testimony. Instead, the City Council denied the SUP application outright based on the new restrictions in the Amended Ordinance.

On January 31, 2011, the purchase contract for the property was modified to reduce the sales price to $850,000, to waive the requirement that the Church obtain zoning approval from the City by January 28, 2011, and to schedule the closing within twenty-one days. On February 24, 2011, the Church learned that the real estate taxes owed on the property and liens for the South Stickney Sanitary District and City exceeded the purchase price. The Church then terminated the contract on March 22, 2011. It received all but $200 of its earnest money back, although the recovery came at some expense to the Church. The Church also spent $6,000 on a survey that was to be credited to the Church at closing, which it is entitled to receive from the bankruptcy estate but which it will never recover because the estate has no assets.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive

a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.      Conduct Being Challenged

Initially, the Court must clarify what exactly the Church is challenging in the Third Amended Complaint as the parties dispute whether the claims are directed at the Prior Ordinance or the Amended Ordinance. Counts I and II allege that the City violated RLUIPA under both the "substantial burden" and "equal terms" provisions by amending the Prior Ordinance after the Church applied for a SUP, delaying and eventually denying the Church's SUP application, and not allowing the Church to use the property for religious worship. Count III is a due process claim, alleging that the City's actions in delaying the Church's SUP application, amending the Prior Ordinance, and then denying the SUP application on the basis of the Amended Ordinance denied the Church due process. Count IV claims that these same actions by the City denied the Church equal protection and singled the Church out for unequal treatment. Count V alleges that the amendment of the Prior Ordinance and the denial of the Church's SUP application violate the Free Exercise clause of the First Amendment by preventing the Church from conducting religious exercises at its desired location.

The City initially argued that the Church could not challenge the adoption of the Amended Ordinance and that the only question before the Court is whether the Church has any

claims with respect to the Amended Ordinance. In response, the Church has clarified that it is

not challenging the City's right to amend or adopt the Amended Ordinance. The Church also

implicitly acknowledges that it has no claims based solely on the Amended Ordinance. *See* Pl.'s

Resp. at 7 ("Plaintiff was damaged by the City's previous ordinance . . . ."); *id.* at 9 (explaining

that the Church's equal terms claim is that "the City treated it on less than equal terms with non-

religious assembly uses under the *prior ordinance*"); *id.* at 11 (arguing that the Church has a due

process claim because it seeks damages for the City's discrimination under the prior ordinance);

*id.* at 13 ("Plaintiff is not challenging the amended ordinance by itself, but the application of the

prior ordinance . . . *combined with* Defendant's delay in Plaintiff's SUP which allowed

Defendant to amend the zoning code to prohibit Plaintiff entirely."). Instead, the Church focuses

on whether the Prior Ordinance and the delay in addressing the SUP until after the City amended

the Prior Ordinance violated federal law. This moots the majority of the City's initial arguments,

which focused on the Amended Ordinance and thus the Court will not address those here.

The City nonetheless argues that the Church cannot maintain any of its claims seeking

damages based on the Prior Ordinance because that ordinance caused the Church no injury as the

decision to deny the SUP was based on the Amended Ordinance. But the Church's injury is not

merely hypothetical, for even if other factors played into the denial of the SUP and the delay in

considering it, those factors go to the merits and not to the initial standing inquiry.[3] The Church

expended time, effort, and money in an attempt to comply with the Prior Ordinance, efforts that

were ultimately rendered futile by the City's actions in amending the ordinance. Although the

City will have defenses to the Church's claims, the Court at this stage finds the Church to have

sufficiently alleged an injury that can be redressed through a damages action against the City.

---

[3] If the City's argument is one of standing, it never frames it as such.

Additionally, the adoption of the Amended Ordinance does not automatically render any claims based on the Prior Ordinance moot because the Church is not seeking injunctive relief but rather damages. *See Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003). In *Civil Liberties for Urban Believers v. City of Chicago* ("*CLUB*"), however, the Seventh Circuit suggested that this rule does not hold true for damages claims under RLUIPA where corrective action has been taken. 342 F.3d 752, 762 & n.6 (7th Cir. 2003) (district court did not err in finding pre-amendment claims, including claim for damages resulting from costs associated with obtaining special use approval under prior ordinance, moot). Judge Posner, in dissent, questioned this departure from the general rule, noting that "[t]he amendment did not moot [the churches'] challenge to the old ordinance because they seek damages for the delay they encountered in obtaining permission to build in desirable locations." *Id.* at 773 (Posner, J., dissenting). One district court has agreed with Judge Posner, allowing a claim for damages to proceed despite corrective action. *See Family Life Church v. City of Elgin*, No. 07 CV 0217, 2007 WL 2790763, at *5 (N.D. Ill. Sept. 27, 2007) ("[W]e do not read the RLUIPA or *Civil Liberties* to stand for the proposition that the corrective action can retroactively erase injuries already incurred as well as the corresponding ability to sue for damages. Accordingly, plaintiffs' claim for alleged damages already incurred under RLUIPA survives this motion to dismiss."). At this stage, the Court will not dismiss the RLUIPA claims because corrective action was taken, for these claims are premised on the City's delay in processing the Church's SUP application under the prior ordinance and thus arguably fall outside *CLUB*'s mootness finding.

**II.      Substantial Burden and Free Exercise of Religion Claims (Counts I and V)**

RLUIPA's substantial burden provision requires that land use regulations that substantially burden religious exercise be the least restrictive means of furthering a compelling governmental interest.  42 U.S.C. § 2000cc(a)(1).  The free exercise clause of the First Amendment also provides that "if a facially-neutral law or land use regulation imposes a substantial burden on religion, it is subject to strict scrutiny."  *Vision Church v. Village of Long Grove*, 468 F.3d 975, 996 (7th Cir. 2006).  Determining whether a land use regulation imposes a substantial burden is ordinarily a question of fact, with the substantiality of the burden depending "on its magnitude in relation to the needs and resources of the religious organization in question."  *World Outreach Conference Ctr. v. City of Chicago*, 591 F.3d 531, 539 (7th Cir. 2009); *Irshad Learning Ctr. v. County of DuPage*, 804 F. Supp. 2d 697, 716 (N.D. Ill. 2011). The Church's substantial burden and free exercise claims are essentially the same, as the parties acknowledge.  The analysis applied to the claims is also similar, and thus the Court will consider them together.  *See Eagle Cove Camp & Conference Ctr., Inc. v. Town of Woodboro, Wis.*, 734 F.3d 673, 682 (7th Cir. 2013); *Vision Church*, 468 F.3d at 996 ("Given the similarities between RLUIPA § 2(a)(1) and First Amendment jurisprudence, we collapse [appellant's] claims for the purpose of this analysis; this approach seems most consistent with post-RLUIPA case law.").

The City first argues that the Church's substantial burden claim fails because the Church does not and cannot allege that there were no areas in the City where a church could be established.  Where a church has a reasonable expectation of obtaining a permit, denial of the permit may be considered a substantial burden.  *Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007).  But where a church has no such reasonable expectation, a substantial burden may be found only if there is a lack of land available in the city

where churches may be located. *Id.* Here, the Church has alleged that it believed that an SUP permit would be issued, relying on a letter its counsel wrote to the City. But the Illinois Appellate Court already found in this same litigation that the Church had no reasonable expectation of obtaining a SUP, concluding that "[a]lthough there was a *possibility* that the city could grant [the Church's] request to conduct church services on the property, since such use was not a permissible use under the zoning ordinance, [the Church] did not have a reason to believe that the city *probably* would permit such use." *Christian Assembly Rios de Agua Viva v. City of Burbank, Ill.*, 948 N.E.2d 251, 256, 408 Ill. App. 3d 764, 350 Ill. Dec. 182 (2011); *see also Petra*, 489 F.3d at 851 ("Having decided to go ahead and purchase the property outright after it knew that the permit would be denied, Petra assumed the risk of having to sell the property and find an alternative site for its church should the denial be upheld (or, if illegal, legally reimposed), just like any other religious organization that wanted to build in the industrial zone.").

Because the Church "decided to assume the ordinance was invalid and proceeded, at its own risk, to enter into a contract and expend funds to purchase the property for use as a church," *Rios de Agua Viva*, 948 N.E.2d at 257, it must instead allege that "a paucity of other land available for churches" in the City made the requirement to obtain a SUP a substantial burden to it, *Petra*, 489 F.3d at 851. The Church has not alleged that no other land was available for churches in Burbank under the Prior Ordinance, admitting instead that churches were permitted in two residential districts. Although the Church alleges it conducted an extensive search for suitable property, this does not imply that there was no other land available in Burbank where a church could have been located under the Prior Ordinance. Instead, it only suggests that the Church did not find land it found suitable, which answers a different question. Thus, the Church

has not alleged that the SUP requirement under the Prior Ordinance amounted to a substantial burden and cannot base its substantial burden or free exercise claims on that requirement alone.

Alternatively, the Church contends that the delay, uncertainty, and expense that accompanied its SUP application, which allowed the City time to amend the Prior Ordinance so as to prohibit the Church from using the property as it wished, is sufficient to state a substantial burden claim. The expenditure of considerable time or money to comply with zoning regulations is not automatically a substantial burden under RLUIPA. *Eagle Cove*, 734 F.3d at 681 ("[T]he fact that Eagle Cove has spent considerable time and money on various applications for rezoning does not constitute, *prima facie*, a substantial burden."); *CLUB*, 342 F.3d at 761 ("That [Appellants] expended considerable time and money . . . does not entitle them to relief under RLUIPA's substantial burden provision."). The delay, uncertainty, and expense that accompany efforts to obtain zoning approval may qualify as a substantial burden under certain circumstances, however. *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 900–01 (7th Cir. 2005). In *New Berlin*, for example, the Seventh Circuit found a substantial burden where there was a showing of bad faith by the city in the face of the church's willingness to meet the city's demands. *Id.* (substantial burden existed where church was forced to either sell the land and find a suitable alternative property or "be subjected to unreasonable delay by having to restart the permit process to satisfy the Planning Commission about a contingency for which the Church has already provided complete satisfaction"); *see also Eagle Cove*, 734 F.3d at 681 (substantial burden claim in *New Berlin* for "delay, uncertainty, and expense" was based on "indicia of bad faith by the City that led the Court to find no compelling governmental interest that the City could put forth to justify its substantial burden on the Church"); *Irshad*, 804 F. Supp. 2d at 714–15 ("[I]t is significant that in [*New Berlin*], as in this

[case], the religious institution has alleged a willingness to meet the demands of both the professional planning staff and elected officials, but has seen its request rebuffed nonetheless."). Here, the Church has alleged that it believed that it met the special use standards under the Prior Ordinance, that the initial hearing on its SUP was "abruptly cancelled," that the City published the proposed amendment to the Prior Ordinance almost immediately after the Church outlined its position to the City on its SUP application, that the Zoning Commission recommended denying the SUP at its December 7 meeting without any written reason, and that the City Council was not scheduled to take up the SUP application until after the amendment was considered. *See* Third Am. Compl. ¶¶ 13, 14, 17, 19, 20. Because the question of substantial burden is inherently a factual one, *World Outreach*, 591 F.3d at 539, the Court finds that the Church's allegations are enough at this stage to allow its claims of delay to proceed under both RLUIPA and the First Amendment. The Court notes, however, that the Church will have difficulty proving these claims, particularly where the alleged delay was relatively short and the Church assumed the risk of having its SUP denied or the Prior Ordinance amended in a way that would prohibit its desired use. *See Petra*, 489 F.3d at 849 (in buying property, church assumed the risk that the village would amend its ordinance to ban its desired use of the property); *Family Life Church v. City of Elgin*, 561 F. Supp. 2d 978, 987–88 (N.D. Ill. 2008) (eight-month application process does not rise to level of substantial burden).

### III. Equal Terms Claim (Count II)

RLUIPA's equal terms provision provides that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). The provision "is violated whenever religious land uses are treated worse than comparable

nonreligious ones, whether or not the discrimination imposes a substantial burden on religious uses." *Digrugilliers v. Consolidated City of Indianapolis*, 506 F.3d 612, 616 (7th Cir. 2007). The existence of alternative sites for a church is irrelevant to an equal terms claim. *Id.* The City all but admits that the Prior Ordinance violated the equal terms provision, instead arguing that the Church has cited no authority to support a damages action challenging a repealed ordinance on the theory that had the ordinance not been repealed it would have violated the Church's rights. But the City has likewise failed to identify any authority that a damages action is not allowed, although *Petra*, which only considered injunctive relief, strongly suggests that no equal terms claim is possible regardless of the relief sought. *See Petra*, 489 F.3d at 849 (church "knew or should have known that Northbrook could redo its ordinance to comply with the 'less than equal terms' provision of RLUIPA in one of two ways: by permitting religious organizations in the industrial zone, or by forbidding all membership organizations in the zone"). In the one case the Court has found that squarely addressed the issue at the motion to dismiss stage, damages claims under RLUIPA were allowed to proceed despite the fact that the city had taken action to correct an alleged violation. *See Family Life Church*, 2007 WL 2790763, at *5; *see also Covenant Christian Ministries, Inc. v. City of Marietta, Ga.*, 654 F.3d 1231, 1245–46 (11th Cir. 2011) (affirming award of nominal damages where ordinance that had since been amended violated equal terms provision). Because the Court is not convinced at this stage that a damages action is precluded, the Court will allow this claim to proceed.

## IV.     Due Process Claim (Count III)

Although its pleading is vague, the Church claims that the delay in hearing its SUP application in combination with the prior ordinance deprived it of both procedural and substantive due process. In order to proceed on a procedural or substantive due process claim,

the Church must assert a protectable liberty or property interest.  *Cole v. Milwaukee Area Technical Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011); *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1002 (7th Cir. 2008).  The Church contends that it had a property interest in the contract for the property and a liberty interest in the free exercise of religion.

With respect to its substantive due process claim, the Church cannot rely on a liberty interest in the free exercise of religion, as there is a specific constitutional provision—the First Amendment—that protects that right.  *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 474 (7th Cir. 2011); *Doe v. Heck*, 327 F.3d 492, 518 n. 23 (7th Cir. 2003).  Because the First Amendment must be the guide for analyzing any claimed violation of the Church's right to the free exercise of religion—an independent claim the Church has also brought—the Church's substantive due process claims cannot go forward based on this fundamental liberty interest.  *Chicago Sch. Reform Bd. of Trs. v. Substance, Inc.*, 79 F. Supp. 2d 919, 937–38 (N.D. Ill. 2000) (collecting cases); *Rubin v. Ikenberry*, 933 F. Supp. 1425, 1432–33 (C.D. Ill. 1996) (substantive due process claim for alleged violation of right to free speech failed where it was a "repeat claim of a First Amendment violation").

Thus, the Church only has a substantive due process claim if it has a valid property interest.  To state a substantive due process claim based on a property interest, the Church must allege that "the regulation is arbitrary and unreasonable, bearing no substantial relationship to public health, safety, or welfare."  *Gen. Auto Serv. Station*, 526 F.3d at 1000–01.  The Church must also allege that state law remedies are inadequate or that an independent constitutional right has been violated.  *Id.* at 1001.  But the City argues that the Court need not consider these requirements because the Church does not have a valid property interest as the Illinois Appellate Court already determined that the Church had no vested right in a particular zoning entitlement.

*Rios de Agua Viva*, 948 N.E.2d at 256, 260. The Church attempts to reframe the relevant property interest as its contract to purchase the property. The Seventh Circuit's decision in *General Auto Service Station*, however, suggests that the City is correct in focusing on the entitlement to a zoning classification and that the mere existence of a contract to purchase property does not give rise to a protected property interest. *Gen. Auto Serv. Station*, 526 F.3d at 1003–06. Although the Church claims that the requirement to obtain a permit in the first place was constitutionally invalid, the Church may not "rely on purported defects in prior versions of the law as the springboard to claim a vested interest in a property use for which it never obtained permission." *Id.* at 1005 ("GASS cannot claim a protected interest in continuing to display advertising that, once illuminated and expanded, was illegal from the start. . . . GASS, just like the plaintiff in *Petra*, is retrospectively relying on the supposed illegality of former incarnations of the zoning ordinance to transform its unlicensed use of property into an authorized use and to give it a property interest in continued use of that property despite subsequent changes to the zoning code. GASS's creative bootstrapping effort fails for precisely the same reasons that Petra's did."). Thus, without a protectable property interest, the Church's substantive due process claim must be dismissed. *Id.* at 1002.

For purposes of its procedural due process claim, the Church's challenge to the zoning procedures is not focused on any liberty interest in the free exercise of religion but rather is a challenge that any property owner might bring, "irrespective of a particular property use or fundamental liberty." *CLUB*, 342 F.3d at 767. "Federal courts are not boards of zoning appeals," however. *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 165, 167 (7th Cir. 1994). Even assuming that the Church had a protectable property interest, any such claim would have to be brought in state court. *See CLUB*, 342 F.3d at 767–68 (procedural due process

challenge to zoning ordinance and special approval procedures must be made in state court).

Thus, the Church's procedural due process claim is dismissed.

## V.        Equal Protection Claim (Count IV)

The Church argues that it has stated an equal protection claim because the Prior Ordinance treated similar groups differently with no rational basis for doing so, while the City maintains that such a claim fails for the same reasons the Church's equal terms claim and should be dismissed.  The Court has already determined that the equal terms claim may proceed and so the Church's equal protection claim based on the Prior Ordinance may proceed as well.

But the Church also has alleged a class of one equal protection claim with respect to the delay that occurred in the City's consideration of its SUP application.  To state a class of one equal protection claim, the Church must allege (1) that the City intentionally treated it differently than others who were similarly situated and (2) that there was no rational basis for the difference in treatment.  *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010).  The Church, however, has failed to allege that there were others who were similarly situated but were treated differently.  Without an allegation to meet the first requirement of a class of one equal protection claim, that claim must be dismissed.  *See LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942–43 (7th Cir. 2010) (affirming dismissal of class of one equal protection claim at motion to dismiss stage where plaintiff had not pleaded facts to suggest it had been treated differently from similarly situated restaurants); *Cahn v. City of Highland Park*, No. 11 C 6082, 2012 WL 917855, at *4 (N.D. Ill. Mar. 14, 2012) (dismissing class of one claim where plaintiff failed to identify a single person similarly situated to him and to explain how that person was identical to the plaintiff in all material respects).

## VI.     Associational Standing

The City also argues that the Church cannot recover damages on behalf of its members who allegedly have assigned their claims to the Church. An organization has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977). The third requirement has been understood "to preclude associational standing when an organization seeks damages on behalf of its members" unless allowed by statute or other rule. *United Food & Commercial Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 554, 557–58, 116 S. Ct. 1529, 134 L. Ed. 2d 758 (1996); *Chicago Teachers Union, Local 1, Am. Fed'n of Teachers, AFL-CIO v. Bd. of Educ. of City of Chicago*, No. 12 C 10311, 2013 WL 3337826, at *2 ("An association cannot sue on behalf of its members when a claim for monetary relief is involved."). The Church has not identified any federal statute or rule that allows it to proceed with damages claims on behalf of its members. Thus, to the extent that the Church is seeking to assert damages claims on behalf of unnamed members, the Church does not have standing to pursue those damages and they are dismissed.

**CONCLUSION**

For the foregoing reasons, the City's motion to dismiss [19] is granted in part and denied in part. The due process claims (Count III) and class of one equal protection claim are dismissed. The Church's damages claims on behalf of its members are dismissed. The City has until April 23, 2014, to answer the Third Amended Complaint.


Dated: April 8, 2014

_____
SARA L. ELLIS
United States District Judge