# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTIAN ASSEMBLY RIOS DE AGUA VIVA, | ) ) ) | |
| Plaintiff, | ) ) | No. 13 C 622 |
| v. | ) ) | Judge Sara L. Ellis |
| CITY OF BURBANK, ILLINOIS, | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Looking for a new home for its growing congregation, Plaintiff Christian Assembly Rios

de Agua Viva (the "Church") entered into a contract to purchase property in the City of Burbank,

Illinois (the "City").  In order to use that property for religious purposes, the Church had to

obtain a special use permit ("SUP").  After the City denied the SUP, the Church terminated the

contract and filed this lawsuit, seeking to recover damages from the City for alleged violations of

the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, the

First and Fourteenth Amendments, the Illinois Constitution, and Illinois state laws.[1]  The parties

have now filed cross-motions for summary judgment.  The City seeks summary judgment on the

Church's RLUIPA substantial burden and equal terms claims, the remaining equal protection

claim, and the free exercise claim, while the Church asks the Court to find that it is entitled to

judgment as a matter of law on the equal terms claim and set that claim for trial on damages.

Because the Church had no reasonable expectation of using the property for religious purposes,

any delay, uncertainty, and expense the Church experienced or incurred while the City

---

[1] Prior to this case's removal to federal court, the state court dismissed the Church's state law claims.  The Church included the state law claims in the Fourth Amended Complaint solely for purposes of preserving the claims for a potential appeal.  *See* Doc. 92 at 26–38.  The Court dismissed the Church's due process and class of one equal protection claims in its ruling on the City's motion to dismiss.  Doc. 38.

considered the SUP application and amended its zoning ordinance did not constitute a substantial burden. Thus, the Court grants the City summary judgment on the substantial burden and free exercise claims. But because the City has not produced evidence justifying the treatment of churches on less than equal terms than seemingly similar secular institutions under the ordinance requiring the Church to obtain an SUP, the Court finds that that ordinance violated RLUIPA's equal terms provision. And because the Court concludes that the Church may recover damages for this violation even though the City denied the SUP application under the amended ordinance, which does not have an equal terms problem, a jury must determine the Church's damages. Finally, as neither party meaningfully addresses the equal protection claim so as to allow a merits decision at this stage, that claim also will proceed to a jury trial.

## BACKGROUND[2]

The Church, with a largely Hispanic membership of approximately 250 individuals who attend weekly services, meets at 6132 S. Kedzie in Chicago, Illinois. But because that facility does not meet all its needs and many of the Church's members had moved to the suburbs, the Church began searching for a new location in the suburbs. Its search extended to southwest suburban Burbank, where the Church's pastor, Luis Ruiz, and at least twelve other member families lived.

In August 2010, after an approximately three and a half year search, the Church entered into a contract to purchase property at 8100 South Parkside Avenue in Burbank. The approximately four acre property includes four structures totaling approximately 27,000 square feet. The Church planned to renovate the property to accommodate a 428 seat sanctuary, allowing it to grow slowly and without the limits of the space of its current location. Ruiz thought moving to Burbank would grow the church and make it easier for those members living

---

[2] The facts in this section are derived from the parties' joint statement of undisputed facts, Doc. 106.

in the suburbs to attend services. The property also provided the Church with the opportunity to offer additional classes on Sundays. Ruiz further envisioned developing a more effective youth outreach program at the property.

A restaurant—the Old Barn—previously occupied the property, but the property stood vacant since October 2008, when the owners of the property filed for bankruptcy. As of October 2010, the property had an appraised as-is market value of $1,445,000 and an as-complete market value of $2,260,000. The Church, however, agreed to a purchase price of $900,000 with the bankruptcy estate. The bankruptcy court approved the contract on September 22, 2010, and the Church paid $50,000 in an escrow money deposit. The contract included a zoning contingency, which provided that if the Church did not obtain the requested zoning approvals on or before January 28, 2011, it could terminate the contract and receive back its earnest money.

The property, located in the "C" commercial district, is the second largest commercially-zoned property in the City. Before December 15, 2010, Burbank's zoning code (the "Prior Ordinance") listed 114 permitted uses in the "C" commercial district. This included various non-religious assembly uses, including dance studios, schools, and halls; physical fitness facilities; business associations; labor associations; civic, social, and fraternal associations; political organizations; and undertaking and funeral parlors. Under the Prior Ordinance, churches could locate as of right in two of the City's four residential districts. But to locate in the "C" commercial district, churches had to obtain a SUP.[3] The Prior Ordinance also listed forty-nine specific uses that required a SUP to be allowed in any district, residential or commercial.

The City has a standard procedure to process zoning applications, including SUPs. After SUP applications are filed, the Building Commissioner (who, at all relevant times, was Frank

---

[3] Approximately thirteen churches exist in Burbank. The property is surrounded by two: Burbank Manor Presbyterian Church (which may also rent out its building to La Iglesia Divino Redentor for services) and St. Albert the Great Catholic Church.

Kainrath) reviews them. The Building Commissioner then refers the matter to the City's Zoning, Planning, and Development Commission (the "Zoning Commission"), a three-member advisory body that conducts a public hearing and makes a recommendation on the SUP application to the City Council. The Zoning Commission typically meets the first Tuesday evening of every month. A notice of the public hearing must be published in a local newspaper no less than fifteen and no more than thirty days before the date of each hearing. Before the public hearing, the Building Commissioner makes an administrative recommendation on the SUP application to the Zoning Commission. The Zoning Commission then conducts a public hearing, after which it takes an oral vote on the SUP application. The recommendation is not finalized until the next monthly meeting, however, when the Zoning Commission approves the minutes of the prior meeting. At that point, the Zoning Commission forwards its recommendation to the City Council. The City Council first considers the Zoning Commission's recommendation at a regularly scheduled Committee of the Whole meeting and then votes on it at a City Council meeting. Although the City Council typically meets three times per month, in December it only holds one formal City Council meeting and one Committee of the Whole meeting, where it discusses pending items but takes no votes. Kainrath testified that the SUP decisionmaking process typically takes three to four months.

On October 8, 2010, the Church applied for a SUP, tendering the $1,200 filing fee and indicating in a cover letter to Kainrath that it tendered the application at that time so that it "can be on the originally scheduled November calendar for Committee and Council hearings and for decision before the City in December." Doc. 107-2 at 2. The Church further indicated that "[t]iming is of the essence with regard to this particular transaction in that it is in the Bankruptcy Court and delay could cause the Church to lose its contract on the property given the Court's

demanding timetable." *Id.* Kainrath reviewed the application and submitted a report to the Zoning Commission, indicating that he did not recommend approval of the SUP as the property was "the last large "C" district left in Burbank for development" and felt "it is not in the best interest of the community due to the loss of the historic use and tax monies." Doc. 107-1 at 2.

Although the Zoning Commission typically meets on the first Tuesday of every month, it did not meet on November 2, 2010, the first Tuesday of November, which happened to be election day. Michael Looney, chairman of the Zoning Commission, testified that as the Stickney Township Democratic Committeeman, he was performing election-related work from about 5:00 a.m. until 10:00 p.m. that day. Similarly, the remaining members, Robert Schmidt and Robert Contreras, also engaged in political activities that day. Knowing of these election activities at least a month beforehand, the Zoning Commission never scheduled its November meeting and did not publish the required notice of hearing. The decision not to hold the meeting, however, was made on October 8, the same day the City received the Church's SUP application. But the decision not to hold a meeting on election day was not without precedent. The Zoning Commission also had not held November meetings due to elections in 2002, 2004, 2008, and 2012, although it did call its regular meeting in 2006 during an election year.

On November 12, 2010, attorneys for the Church sent the Zoning Commission a letter requesting the issuance of the SUP application in a timely manner. The letter explained that the Prior Ordinance violated RLUIPA and the Equal Protection Clause of the Fourteenth Amendment because the Prior Ordinance permitted non-religious assemblies, but not religious assemblies, as of right in the "C" commercial district. The Church indicated it might consider legal action if the City denied the Church's SUP application.

At the same time the City was purportedly considering the Church's SUP application, it also set about to amend the Prior Ordinance to require uses in "C" commercial districts to be tax generating. When Burbank's mayor, Harry Klein, learned of the Church's SUP application, he spoke to Ruiz and told Ruiz that he wanted to maintain the property as a tax-producing property. Klein determined the City should preserve the property for future commercial use, referring the matter to the City's attorneys to determine if anything in the Prior Ordinance would "seriously hurt any commercial real estate" in the City. Doc. 106 ¶ 30. This led the City attorneys to draft a zoning amendment.

On November 18, 2010, the City published a Legal Notice of Public Hearing in the Burbank-Stickney Independent newspaper, announcing a December 15, 2010 hearing to consider this proposed amendment to the Prior Ordinance. The Legal Notice read in part:

> Permitted and special uses in "C" Commercial Districts are proposed to be limited to commercial retail stores, service establishments, and professional offices that generate tax revenues, maintain the City's tax base, and allow for convenient locations for the public to shop, obtain services and conduct business. All tax exempt uses, residential uses and uses otherwise permitted or allowed as special use in a residential zoning classification are proposed to be prohibited.

Doc 107-6 at 2.

The Church learned of the proposed amendment on November 29, 2010. In response, the Church filed suit against the City in federal court on December 3 but then voluntarily dismissed the case on December 13. Despite knowing of the proposed amendment, the Church proceeded with its SUP application. The Zoning Commission held its initial hearing on the application on December 7, unanimously recommending denial of the SUP because of the loss of taxable real estate. A hearing on the SUP application was scheduled before a committee of the City Council on January 19, 2011 and before the full City Council on January 26, 2011. On December 13,

2010, the Church filed another complaint, but this time in the Circuit Court of Cook County, seeking an injunction ordering the City to allow the Church to use the property as a church. On December 14, the day before the hearing on the proposed change to the Prior Ordinance, the state trial court denied the Church's motion for preliminary injunction.

On December 15, 2010, the City Council held a public hearing on the proposed amendment. The City Council appointed itself as the Zoning Commission to conduct a hearing on the amendment. Klein indicated this was for the Church's benefit, "in the interest of time due to respect to [the Church's members]" so that they would "know where [they] stand." Doc. 106 ¶ 35. After adjourning the Zoning Commission hearing, the City Council reconvened and passed the amendment. The amendment (the "Amended Ordinance") allows churches, temples, and places of worship in "R" single family residence districts, "R-1" single family residence districts, "R-2" limited multi-family residence districts, and "R-3" multi-family residence districts. All tax exempt uses, residential uses, and uses otherwise permitted or allowed as special uses in residential zoning classifications are expressly prohibited in "C" commercial districts, however. This means that, under the Amended Ordinance, unless they are grandfathered, no churches may locate in "C" commercial districts.

Despite the passage of the Amended Ordinance and the Zoning Commission's recommendation against approval of the SUP application, the Church pressed forward. The Church appealed the denial of its TRO and preliminary injunction to the Illinois Appellate Court on December 29, 2010. Counsel for the Church also contacted the City attorney to inquire whether the January 19, 2011 hearing on the Church's SUP application would go forward with the Church being able to present witnesses. The City attorney responded that the City Council Committee of the Whole would hold its regular meeting that day and that the Church and the

public would be allowed to speak. The City attorney further indicated that the Church could proceed with its petition or withdraw it. On January 19, 2011, at its Committee of the Whole meeting, the City Council received the Zoning Commission's recommendation on the Church's SUP application and indicated that the City Council would take up the matter the following week. At that January 26, 2011 meeting, the City Council unanimously denied the SUP application based on the fact that the Amended Ordinance did not allow the applied for use as a special use in the "C" commercial district.

The contract for the property allowed the Church to terminate the contract if it did not obtain zoning approval within 120 days or as extended at the Church's option for two additional thirty-day periods. On January 31, 2011, the parties amended the contract to reduce the sales price to $850,000, waive the zoning approval requirement, and schedule the closing within twenty-one days from the date of the amendment. But the closing never occurred. On February 22, 2011, the Illinois Appellate Court heard oral argument on the Church's appeal of the state trial court's preliminary injunction denial and issued a bench ruling advising that it would affirm the denial.[4] Additionally, back taxes and liens on the property had accumulated to the point that, by February 2011, the Trustee for the bankruptcy estate could not deliver clear title to the property to the Church at the reduced purchase price.[5]

The Church used the Trustee's inability to deliver clear title as the reason to terminate the contract for the property on March 22, 2011. The Church later admitted that it also determined not to move forward because it had become clear it was unlikely to obtain the right to use the

---

[4] A written ruling issued on March 31, 2011.

[5] As of September 2010, the back taxes, interest, and penalties for the property were approximately $872,000. At the end of January 2011, the back taxes, interest, and penalties had increased to approximately $905,207.87, and totaled over $928,000 by the end of February 2011. The South Stickney Sanitary District and City liens totaled $11,749.38 as of December 15, 2010.

property for religious assembly. The Church received all but $200 of its earnest money back.

But it did not recover other expenses expended in pursuit of the property, including attorneys'

fees and $6,000 on a survey that was to be credited to the Church at closing. Because the

bankruptcy estate had no assets, the Church has no means to recover this amount.

On November 13, 2015, the Church acquired an existing church building at 9000 S.

Ridgeland in Oak Lawn for $1,200,000.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and

assess the proof as presented in depositions, answers to interrogatories, admissions, and

affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party

seeking summary judgment bears the initial burden of proving that no genuine issue of material

fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265

(1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the

evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue

for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a

bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v.

Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light

most favorable to the non-moving party and draw all reasonable inferences in that party's favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

# ANALYSIS

## I.     RLUIPA Substantial Burden Claim (Count I)

In ruling on the City's motion to dismiss, the Court narrowed the scope of the Church's RLUIPA substantial burden claim, finding that the Church could proceed based only on the theory that "the delay, uncertainty, and expense that accompanied its SUP application, which allowed the City time to amend the Prior Ordinance so as to prohibit the Church from using the property as it wished" constituted a substantial burden.[6]  Doc. 38 at 10 (citing *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 900–01 (7th Cir. 2005)).  The City argues that the Church cannot demonstrate a genuine issue of fact exists on this claim, while the Church contends that the issue is a factual one that a jury should decide.[7]

The Church has the initial burden of establishing that the delay, uncertainty, and expense it incurred in pursuing its SUP application, ultimately having the application denied because the City amended the Prior Ordinance to prohibit the Church from using the property for religious purposes, implicated and substantially burdened its religious exercise.  *See Affordable Recovery Housing v. City of Blue Island*, No. 12-cv-4241, 2016 WL 5171765, at *6 (N.D. Ill. Sept. 21,

---

[6] After the Court issued its Opinion and Order on the City's motion to dismiss, the Supreme Court clarified that to find a substantial burden, the Court need only consider whether the requirement in question "seriously violates" the Church's religious exercise.  *Schlemm v. Wall*, 784 F.3d 362, 364 (7th Cir. 2015) (citing *Holt v. Hobbs*, --- U.S. ----, 135 S. Ct. 853, 862, 190 L. Ed. 2d 747 (2015), and *Burwell v. Hobby Lobby*, --- U.S. ----, 134 S. Ct. 2751, 2775, 189 L. Ed. 2d 675 (2014)).  The Church does not argue that the Court should broaden the scope of the substantial burden claim based on this revised standard, however.

[7] The Church does not substantively respond to the City's arguments concerning why the established facts do not amount to a substantial burden, failing to address the caselaw cited by the City or provide its own caselaw in support of its claim that any delay, uncertainty, or expense it faced imposed a substantial burden on its religious exercise.  The Church's argument on its substantial burden claim in its cross-reply brief could be read as an attempt to broaden the claim from one solely for uncertainty, delay, and expense, but doing so in its cross-reply—intended to address arguments related to the Church's partial motion for summary judgment on the equal terms claim and not to raise additional arguments opposing the City's motion for summary judgment on the substantial burden claim—is inappropriate.  *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived.").

2016). Once the Church has done so, the burden shifts to the City to "demonstrate that the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest." *Id.* Determining whether a land use regulation imposes a substantial burden is ordinarily a question of fact, with the substantiality of the burden depending "on its magnitude in relation to the needs and resources of the religious organization in question." *World Outreach Conference Ctr. v. City of Chicago*, 591 F.3d 531, 539 (7th Cir. 2009).

The City contends that the Church cannot show that it experienced any substantial burden where the Church had no reasonable expectation of receiving a SUP and any delay, uncertainty, and expense amount to ordinary inconveniences inherent in the zoning process. As the Court previously noted, the Illinois Appellate Court found in litigation over the same property that the Church had no reasonable expectation of obtaining a SUP. Doc. 38 at 9 (quoting *Christian Assembly Rios de Agua Viva v. City of Burbank, Ill.*, 948 N.E.2d 251, 256, 408 Ill. App. 3d 764, 350 Ill. Dec. 182 (2011) ("Although there was a *possibility* that the city could grant [the Church's] request to conduct church services on the property, since such use was not a permissible use under the zoning ordinance, [the Church] did not have a reason to believe that the city *probably* would permit such use.")). This means that the Church assumed the risk that the City would amend its ordinance to ban the Church's desired use of the property, which is exactly what happened. *See Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 849 (7th Cir. 2007) (in buying property, church assumed the risk that the village would amend its ordinance to ban its desired use of the property).

Nonetheless, despite assuming the risk that the City would not approve its SUP application or that the City would amend the Prior Ordinance so as to completely foreclose the use of the property for religious purposes, the Church proceeded with its SUP application,

expending time and money and facing uncertainty in the process over a three to four month period.  But the expenditure of time or money alone does not constitute a substantial burden.  *See Eagle Cove Camp & Conference Ctr., Inc. v. Town of Woodboro, Wis.*, 734 F.3d 673, 681 (7th Cir. 2013) ("[T]he fact that Eagle Cove has spent considerable time and money on various applications for rezoning does not constitute, *prima facie*, a substantial burden.").  Instead, as the Court noted in its Opinion and Order on the motion to dismiss, the delay, uncertainty, and expense must be accompanied by some additional arbitrary action or bad faith by the City.  *See* Doc. 38 at 10.  For example, in *New Berlin*, the Seventh Circuit found a substantial burden where the city acted in bad faith in the face of the church's willingness to meet the city's demands.  *New Berlin*, 396 F.3d at 900–01 (substantial burden existed where church was forced to either sell the land and find a suitable alternative property or "be subjected to unreasonable delay by having to restart the permit process to satisfy the Planning Commission about a contingency for which the Church has already provided complete satisfaction"); *see also Eagle Cove*, 734 F.3d at 681 (substantial burden claim in *New Berlin* for "delay, uncertainty, and expense" was based on "indicia of bad faith by the City that led the Court to find no compelling governmental interest that the City could put forth to justify its substantial burden on the Church"); *Irshad Learning Ctr. v. City of Chicago*, 804 F. Supp. 2d 697, 714–15 (N.D. Ill. 2011) ("[I]t is significant that in [*New Berlin*], as in this [case], the religious institution has alleged a willingness to meet the demands of both the professional planning staff and elected officials, but has seen its request rebuffed nonetheless.").  But the Court finds *New Berlin* distinguishable; in *New Berlin*, the "religious organization . . . had a reasonable expectation that it would be granted the permit it sought and was arbitrarily denied those permits," while here, the Church had no reasonable expectation of using the property for religious purposes and assumed the risk of the SUP's denial

and any zoning changes preventing use of the property as a church.[8] *See Calvary Temple Assembly of God v. City of Marinette, Wis.*, No. 06-C-1148, 2008 WL 2837774, at *8 (E.D. Wis. July 21, 2008) (finding no claim for delay, uncertainty, and expense because, when the church bought the property, the church assumed the risk of having to sell the property and find an alternative site); *Andon, LLC v. City of Newport News, Va.*, 813 F.3d 510, 515 (4th Cir. 2016) (city's denial of variance did not "cause [plaintiffs] to suffer delay and uncertainty in locating a place of worship" because plaintiffs "never had a reasonable expectation that the property could be used as a church," meaning that any "burdens they sustained . . . were self-imposed hardships," which do "not support a substantial burden claim under RLUIPA, because the hardship was not imposed by governmental action altering a legitimate, pre-existing expectation that a property could be obtained for a particular land use").

The Church does not explain how the City's actions, combined with delay, uncertainty, and expense, imposed a substantial burden on the Church so as to rebut the cases cited by the City. Instead, the Church merely recites a timeline of the events surrounding its SUP application, the City's adoption of the Amended Ordinance, and the services the Church could not develop because it did not purchase the Burbank property. This litany of facts, however, without any further explanation as to how the facts fit into the legal framework for a substantial burden claim based on undue delay, uncertainty, and expense, does nothing to rebut the City's arguments. Nor will the Court make the Church's arguments for it, as the Church is represented by counsel and has had several opportunities at this point to develop a coherent substantive legal

---

[8] In *World Outreach*, the Court found a substantial burden where the plaintiff was given the runaround in its attempt to operate as a community center in a particular district. 591 F.3d at 536–37. But in *World Outreach*, the plaintiff had originally been told it needed a SUP to operate as a community center when it needed no such permit because it was entitled to continue the use of the center as a lawful nonconforming use. *Id.* at 537. Thus, as in *New Berlin* and unlike in the case here, the plaintiff could be said to have had a reasonable expectation of operating as a community center on which the city infringed.

argument on the issue. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (the court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel"); *United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived.").

But even taking into account the Church's listed facts, the Court cannot find a material issue of fact on the substantial burden issue. Aside from the fact that the Church did not have a reasonable expectation that it could use the property as a matter of law, further evidenced in the contract's contingency provision, the delays, expenses, and uncertainties that the Church faced amount to ordinary inconveniences involved in the zoning process. *See Vision Church, United Methodist v. Vill. of Long Grove*, 397 F. Supp. 2d 917, 930 (N.D. Ill. 2005) ("That Vision paid substantial fees and expenses, or was subjected to the same ordinance as other developers who wish to build in the Village, does not create a substantial burden for Vision."). Although the Church appears to make much of the fact that the Zoning Commission did not meet in November, it cannot point to nefarious reasons for the lack of such a meeting. The scheduled meeting date fell on election day, a day when the Zoning Commission's members had political commitments. No meeting notice had been published and then withdrawn upon receipt of the Church's SUP application, and such meetings had not occurred on election day in years past. Regardless, the month delay cannot be considered material; Kainrath testified the City typically took three to four months to provide decisions on SUP applications, Mayor Klein advised Ruiz soon after the Church filed its SUP application that it conflicted with the City's desire to maintain the property's commercial character, the City acted quickly in adopting the Amended Ordinance, and all told the Church knew in January—a little over three months after filing its

SUP application—that it could not use the property for religious purposes. Such a short period of time does not rise to the level of a substantial burden.[9] *See Family Life Church v. City of Elgin*, 561 F. Supp. 2d 978, 987–88 (N.D. Ill. 2008) (eight-month application process does not rise to level of substantial burden).

Because the Church had no reasonable expectation of using the property for religious purposes, any delay, uncertainty, and expense the Church experienced or incurred while the City considered the SUP application and adopted the Amended Ordinance did not constitute a substantial burden. The Court grants summary judgment for the City.

## II.     First Amendment Free Exercise Claim (Count V)

The Court previously analyzed the Church's RLUIPA substantial burden and First Amendment free exercise claims together. *See* Doc. 38 at 8  In *Holt*, the Supreme Court specifically noted that the district court in that case had "improperly imported a strand of reasoning from cases involving prisoners' First Amendment rights," 135 S. Ct. at 862, indicating that courts should not analyze RLUIPA substantial burden and First Amendment claims together, *see Walker v. Scott*, No. 13-3153, 2015 WL 5450497, at *4 (C.D. Ill. Sept. 15, 2015) (analyzing free exercise claim separately from RLUIPA substantial burden claim, using substantial burden standard from pre-*Holt* cases).  In moving for summary judgment on the free exercise claim, however, the City argues only that because summary judgment is proper on the RLUIPA substantial burden claim, it also follows that summary judgment should be granted on the free exercise claim.  The Church does not substantively disagree, referring the Court to its discussion of the RLUIPA substantial burden claim.  Based on these concessions, and because the Court has

---

[9] Additionally, Ruiz testified that the delay only amounted to about a month, meaning that without such a delay and assuming the SUP application was approved, a closing would have occurred in February 2011. But even at that point, the tax liability for the property exceeded the original or amended purchase price for the property, keeping the Trustee from being able to provide the Church with clear title.

found the Church cannot prevail on its RLUIPA substantial burden claim, the Court similarly grants the City summary judgment on the free exercise claim. *See Affordable Recovery Housing*, 2016 WL 5171765, at *11 (deciding not to "revisit Plaintiff's RLUIPA-eligible claims in assessing Plaintiff's First Amendment claims").

### III.  RLUIPA Equal Terms Claim (Count II)

Both the City and the Church seek summary judgment on the Church's RLUIPA equal terms claim. The Church argues that the Court should grant it summary judgment as to the substantive violation, leaving the issue of damages for trial. The City, on the other hand, contends that the Church's equal terms claim fails because the Church cannot recover damages for an equal terms violation where its SUP application was denied under the Amended Ordinance, not the Prior Ordinance. Alternatively, the City contends that the Church has not carried its burden in establishing an equal terms violation. The Court first addresses the issue of a substantive violation and then takes up the question of whether the Church can recover damages for the Prior Ordinance's violation of the equal terms provision.

#### A.  Substantive Violation of the Equal Terms Provision

RLUIPA's equal terms provision provides that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). The provision "is violated whenever religious land uses are treated worse than comparable nonreligious ones, whether or not the discrimination imposes a substantial burden on religious uses." *Digrugilliers v. Consolidated City of Indianapolis*, 506 F.3d 612, 616 (7th Cir. 2007). The Court considers how the land use regulations at issue affect similarly situated institutions with respect to accepted zoning criteria, such as sufficiency of parking space, traffic control, or

generation of significant taxable revenue.  *See River of Life Kingdom Ministries v. Vill. of Hazel Crest, Ill.*, 611 F.3d 367, 371, 373 (7th Cir. 2010).

Here, the Church brings a facial challenge to the Prior Ordinance, claiming that at the time it entered into the contract to purchase the property and applied for the SUP, the Prior Ordinance violated RLUIPA's equal terms provision.[10]  The Church argues that because the Prior Ordinance allowed certain non-commercial, tax exempt uses as of right in the "C" commercial districts but required churches to obtain SUPs to locate there, it has made a *prima facie* case that the Prior Ordinance treated religious assemblies unequally.  Based on this showing, the Church claims that the burden shifts to the City to demonstrate that "the less-than-equal-terms are on account of a legitimate regulatory purpose, not the fact that the institution is religious in nature."  *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1172–73 (9th Cir. 2011) ("The burden is not on the church to show a similarly situated secular assembly, but on the city to show that the treatment received by the church should not be deemed unequal, where it appears to be unequal on the face of the ordinance."); *see also* 42 U.S.C. § 2000cc-2(b) ("If a plaintiff produces prima facie evidence to support a claim alleging . . . a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim[.]").[11]

---

[10] The contours of the Church's equal terms claim are not clear from the Fourth Amended Complaint, *see* Doc. 92 ¶¶ 53–57, despite the fact that the Church filed this latest version of its complaint after the Court ruled on the motion to dismiss, which addressed the confusion concerning the parameters of the Church's claims, *see* Doc. 38 at 5–7.  But in its memorandum in support of its request for partial summary judgment on the equal terms claim, the Church clarifies that it pursues a facial challenge to the Prior Ordinance.  *See* Doc. 105 at 8–9.

[11] The court's decision in *Truth Foundation Ministries, NFP v. Village of Romeoville*, that the church had not provided evidence to support its facial challenge linking the uses for a church and other institutions (in that case, a museum and art gallery) by reference to accepted zoning criteria, thus failing to show a likelihood of success on the merits, is distinguishable.  --- F. Supp. 3d ----, 2016 WL 757982, at *14–15 (N.D. Ill. Feb. 26, 2016).  In *Truth Foundation Ministries*, the court considered whether to issue a preliminary injunction, where the plaintiff bears the burden of proving their likelihood of success on the

The Prior Ordinance allowed dance studios, schools, halls, business associations, labor associations, civic, social, and fraternal associations, political associations, and funeral parlors as permitted uses in the "C" commercial district. Churches, however, required a SUP to locate in the "C" commercial district. On its face, the Prior Ordinance appears to treat similar assemblies on less than equal terms, then, because the secular institutions do not necessarily generate significant tax revenue and are non-commercial in nature. *See River of Life*, 611 F.3d at 373–74 (noting that "should a municipality create what purports to be a pure commercial district and then allow other uses, a church would have an easy victory if the municipality kept it out," while approving of an ordinance that created a commercial district that excluded churches, community centers, meeting halls, and libraries because "these secular assemblies, like churches, do not generate significant taxable revenue or offer shopping opportunities"); *Digrugilliers*, 506 F.3d at 614–15 (noting issues with code that permitted assembly halls, funeral homes, civic clubs, and junior colleges and other schools as of right in commercial district but required churches to apply for a variance to locate there). Indeed, in amending the Prior Ordinance to restrict the "C" commercial district to only tax generating uses, all these non-secular assembly uses pointed out by the Church are no longer allowed, except for "commercial dance studios, schools, and halls," Doc. 107-7 at 32, suggesting that the Prior Ordinance had an equal terms problem the Amended Ordinance sought to correct by appealing to acceptable zoning criteria—tax generation.[12] The burden thus shifts to the City to demonstrate that the apparently unequal treatment is based on legitimate zoning criteria, such as traffic flow, parking concerns, or tax revenue generation.

claim, regardless of who carries the ultimate burden on the merits. *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005). Here, however, the burden reverts back to the City, which carries the ultimate burden on the merits.

[12] Indeed, the Church pointed out the equal terms problem to the City in a letter just days before the City issued its public notice concerning the Amended Ordinance.

Although the City argues that special uses are presumptively permissible provided they meet certain criteria and thus no equal terms violation exists, the need for a SUP alone differentiates treatment of a church from a non-religious assembly allowed in the "C" commercial district as of right. *See Digrugilliers*, 506 F.3d at 615 (considering whether requiring a church to obtain a variance to lease space for religious services in a commercial district treated a religious assembly on less than equal terms with a nonreligious assembly). The City also does not provide any evidence to substantiate treating churches differently than non-religious assemblies allowed as of right in the "C" commercial district under the Prior Ordinance. Although it argues, without evidence, with respect to the equal protection claim that churches "are unique uses – particularly with regard to the core land use considerations of traffic and parking – because of the peaks-and-valley nature of a church operation," Doc. 97 at 15, such unsupported generalization cannot defeat a motion for summary judgment or create a material issue of fact on the issue.[13] *See Thornton v. M7 Aerospace LP*, 796 F.3d 757, 768 (7th Cir. 2015) ("[S]urviving summary judgment requires evidence, not assumptions."). Similarly, its speculation that dance studios do not present significant traffic concerns, relying solely on counsel's say-so without citation to evidence, cannot be credited at this stage. *Cf. Truth Foundation Ministries*, 2016 WL 757982, at *15 (noting that city provided some evidence of the criteria supporting different treatment of churches and museum and art galleries even at preliminary injunction stage, suggesting potentially valid reasons for why museums and art galleries might be allowed in the challenged district but religious assemblies not). As the City

_____

[13] The City does cite to an Illinois Supreme Court case that found that "[a] church may be an appropriate special use because, depending upon its size and location, it may create traffic or parking problems within the neighborhood in which it is located." *City of Chicago Heights v. Living Word Outreach Full Gospel Church & Ministries, Inc.*, 749 N.E.2d 916, 926, 196 Ill. 2d 1, 255 Ill. Dec. 434 (2001). But this does not provide evidence of the City's reasons for requiring churches to obtain SUPs but allowing dance studios, schools, halls, business, labor, civic, social, fraternal, and political associations, and funeral parlors to locate in the "C" commercial district as of right.

itself quoted in response to the Church's presentation on the substantial burden claim, "[s]ummary judgment 'is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). Because the City has not carried its burden, the Court finds that the Prior Ordinance violated the equal terms provision on its face.

### B. Entitlement to Damages

The question then becomes whether the Church can recover for the equal terms violation. In its Opinion and Order on the motion to dismiss, the Court noted that neither side identified authority as to whether an equal terms claim could proceed challenging a repealed ordinance. *See* Doc. 38 at 12. The City argues that because it denied the Church's SUP application based on the Amended Ordinance, not the Prior Ordinance, the Church never suffered any damages under the offending ordinance. Specifically, the City maintains that the Church must have received a final decision on its SUP application under the Prior Ordinance for it to be entitled to damages, regardless of whether the Court treats the challenge as facial or as applied. The City relies on *CMR D.N. Corp. v. City of Philadelphia*, a Third Circuit case in which the city rescinded its application of a height restriction to plaintiff's property. 703 F.3d 612, 621 (3d Cir. 2013). Based on this change in the ordinance, the Third Circuit found that the plaintiff could not pursue damages for a facial challenge to the height restriction because facial challenges aim not to award a plaintiff damages but rather to serve "the broad societal purpose of striking an unconstitutional statute from the books." *Id.* at 624 (quoting *Weissman v. Fruchtman*, 700 F. Supp. 746, 753 (S.D.N.Y. 1988)); *see also id.* at 627 ("In keeping with our obligation to not entertain speculative claims, and in the interest of highlighting the importance of the finality rule,

we hold that compensatory damages are not available to a plaintiff challenging a zoning ordinance under the theory that the mere enactment of an ordinance harmed such plaintiff, unless the plaintiff applies for and is denied a permit under the offending statute.").  But *CMR* limited itself to rejecting damages "for a facial due process challenge to a zoning ordinance," *id.* at 625, noting that another case in the Third Circuit, *Lighthouse Institute for Evangelism v. City of Long Branch*, 510 F.3d 253 (3d Cir. 2007), allowed damages in a facial challenge under the First Amendment and RLUIPA.  But the City here, as the *CMR* court noted may be the case, argues that *Lighthouse* does not allow damages for facial challenges under RLUIPA where a plaintiff never received an adverse decision under that ordinance.  *See Lighthouse*, 510 F.3d at 259 (plaintiff had applied for and been denied a permit under the repealed ordinance); *CMR*, 703 F.3d at 625 n.8 ("The compensation permitted in [*Lighthouse*] was therefore connected to a specific application of the ordinance to the plaintiff.  It is thus not clear that *Lighthouse* actually permitted a damages claim to go forward in connection with a facial challenge, as opposed to an as-applied challenge.").  But *Lighthouse* never made such a denial requirement explicit.

Other cases allowing plaintiffs to pursue damages for a facial challenge to a repealed ordinance under RLUIPA's equal terms provision have also involved plaintiffs who have been denied a permit or variance before the ordinance was amended or repealed.  *See, e.g.*, *Covenant Christian Ministries, Inc. v. City of Marietta, Ga.*, 654 F.3d 1231, 1237–38, 1245–46 (11th Cir. 2011) (affirming award of nominal damages to plaintiff whose rezoning application had been denied before ordinance that facially violated equal terms provision was amended); *Riverside Church v. City of St. Michael*, --- F. Supp. 3d ----, 2016 WL 4545310, at *9 (D. Minn. Aug. 31, 2016) (compensatory damages claim related to prior ordinance under RLUIPA not moot based

on fact that ordinance had been amended after city denied church's planning application).[14]  But as in *Lighthouse*, neither of these cases specifically premised the decision to allow the plaintiffs' claims under the repealed ordinance to go forward on the fact that the plaintiff had received a final decision from the city.[15]

The Seventh Circuit has not squarely addressed the issue presented here, although its *Petra* decision provides the Court with some guidance.  The *Petra* court first suggests that no equal terms claim, regardless of the relief sought, is viable where a city amends an ordinance to correct an equal terms violation.  *See Petra*, 489 F.3d at 849 (church "knew or should have known that [the city] could redo its ordinance to comply with the 'less than equal terms' provision of RLUIPA in one of two ways: by permitting religious organizations in the industrial zone, or by forbidding all membership organizations in the zone").  If that were the case, however, the court would have had no need to proceed to find a damages claim for an equal

---

[14] In its Opinion and Order on the motion to dismiss, the Court also cited *Family Life Church v. City of Elgin* as a case it had located suggesting that, at least at the motion to dismiss stage, a damages claim under RLUIPA could proceed despite the fact that the city had acted to correct an alleged violation.  *See* Doc. 38 at 12 (citing *Family Life Church*, No. 07 CV 0217, 2007 WL 2790763, at *5 (N.D. Ill. Sept. 24, 2007)).  At the summary judgment stage in *Family Life Church*, the plaintiff's equal terms claim turned out to be an as applied challenge, comparing the treatment of the religious organization's permit application to operate a homeless shelter to that of a non-religious organization's application to do the same.  *See Family Life Church*, 561 F. Supp. 2d at 989.

[15] The other cases the City cites in support of a finality rule under RLUIPA do not involve repealed ordinances but rather situations where plaintiffs filed suit prior to pursuing variances or relief from the municipality under existing ordinances, which is not the case here.  *See Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 979 (9th Cir. 2011) (finding plaintiff's RLUIPA claims unripe where plaintiff had not submitted a permit application); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 352 (2d Cir. 2005) (requiring plaintiffs to proceed before zoning board of appeals before coming to court).  Even these cases recognize certain exceptions to the doctrine, such as where obtaining final approval would be futile.  *See Guatay*, 670 F.3d at 981 (futility exception to finality "refers to conditions that make the process itself impossible or highly unlikely to yield governmental approval of the land use that claimants seek—such as government obstinacy," although applicant must still at least submit a complete application before benefiting from futility exception).  Here, to the extent any finality requirement applies, the Church qualifies under the futility exception because it submitted a complete SUP application but a final decision on that application under the Prior Ordinance was rendered impossible by the City's actions in amending that ordinance.

terms violation under a repealed ordinance time-barred. *See id.* at 849–50. As relevant to this case, the court acknowledged that "[m]ere knowledge of the existence of an invalid law that might be applied to one is not an injury" but then concluded that the church's injury under the prior ordinance arose when the Church entered into a contract to buy property for which it needed special permission from the village to operate as a church. *Id.* The court continued that "[i]f the ordinance was invalid and therefore religious organizations had the same rights in the industrial zone as other membership organizations that, so far as appears, differ from religious ones only in being secular, then were it not for the ordinance Petra would have purchased the property without conditions and begun operating the warehouse as a church without facing an injunction." *Id.* at 850. Thus, according to the Seventh Circuit, the injury did not depend, as the City contends, on a permit denial or an adverse action under the repealed ordinance but rather on the immediate effect that the ordinance had on the church's right to operate on the same terms as other secular organizations. *See id.* Drawing from this analysis in *Petra*, the Court concludes that the Church may recover damages for the equal terms violation here. As in *Petra*, had it not been for the Prior Ordinance, which treated religious organizations on less than equal terms than similar secular ones in the "C" commercial district, the Church would have purchased the property without conditions and begun operating the property as a church, instead of being forced to abandon the contract, lose the money it invested in purchasing the property, and restart its search for a new home for its congregation.

The Seventh Circuit's recent decision in *Six Star Holdings, LLC v. City of Milwaukee* also supports the Court's conclusion that the Church can pursue damages for the equal terms violation under the Prior Ordinance. *See* 821 F.3d 795, 804 (7th Cir. 2016) ("Courts routinely entertain suits for damages stemming from repealed laws."). In *Six Star Holdings*, the plaintiff

chose not to apply for a license under the prior ordinances, preventing the city from deciding on its application, but the court nevertheless found he was entitled to damages for lost profits stemming from the unconstitutionality of those ordinances. *Id.* at 803. Although the court treated the challenge as an as applied challenge, the court found little difference in construing the plaintiff's challenge to the ordinances as an applied or facial challenge because the ordinance kept him from engaging in protected speech. *Id.* Here, the same reasoning applies—regardless of whether the Church's equal terms claim is considered a facial or as applied challenge, the Church "already suffered an injury from the unconstitutional ordinance[ ]" because it could not purchase the property under the terms of its original contract as a result of the Prior Ordinance. *Id.* Damages would redress the harm the Church suffered as a result of not being allowed to operate the property as a church without facing the SUP process. Thus, the Court finds that the Church may pursue damages for its equal terms claim, which must be submitted to a jury.

## IV.    Equal Protection Claim (Count IV)

Although the City purports to move for summary judgment on the Church's equal protection claim, it fails to properly support its arguments as to why the Court should grant summary judgment on this claim. Initially, the City combines its analysis on the equal terms and equal protection claims, while focusing its arguments on why the Church's equal terms claim fails. *See* Doc. 97 at 8–14. The City does then address the equal protection claim independently but without providing citations to supporting facts or law. *Id.* at 15; *see also* Doc. 108 at 14–15. The Church cannot escape blame either, as it similarly devotes only approximately half a page to the equal protection claim without citing any facts or caselaw in support. *See* Doc. 105 at 14–15. Neither side has properly addressed the claim at the summary judgment stage, and the Court refuses to research the law and construct the parties' arguments for them. *See Carmichael v.*

*Vill. of Palatine, Ill.*, 605 F.3d 451, 460 (7th Cir. 2010) (burden of defeating summary judgment did not shift to non-movant where movants did not cite the "basic facts and law which, in their view, warranted summary judgment on this claim"); *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006) ("An advocate's job is to make it easy for the court to rule in his client's favor[.]").  Therefore, the equal protection claim, as limited in the Court's Opinion and Order on the motion to dismiss, *see* Doc. 38 at 15, will proceed to trial.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the City's motion for summary judgment [94].  The Court grants the Church's motion for partial summary judgment [104].  The Court grants summary judgment for the City on the RLUIPA substantial burden claim (Count I) and the First Amendment free exercise claim (Count V).  The Court grants partial summary judgment for the Church on the RLUIPA equal terms claim (Count II), finding that the Prior Ordinance violated RLUIPA's equal terms provision, with the Church entitled to damages as determined by a jury.  The equal protection claim (Count IV) will also proceed to trial.


Dated: February 21, 2017

_____
SARA L. ELLIS
United States District Judge