**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTIAN ASSEMBLY RIOS DE AGUA VIVA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13 C 622 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| CITY OF BURBANK, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

After years of litigation over Plaintiff Christian Assembly Rios de Agua Viva's (the "Church") failed attempt to purchase property in the City of Burbank, Illinois (the "City") with the intent to use that property for religious purposes, the parties reached a settlement on January 8, 2018 on the eve of a damages trial. The Court had previously found that the City's prior zoning ordinance violated the equal terms provision of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, and that the Church could recover damages on this specific claim. *See* Doc. 113 at 16–24. Pursuant to the terms of the settlement, the City agreed to pay the Church $176,000, with the Court resolving the matter of attorneys' fees and costs. The parties further agreed that the Church would only seek fees related to the litigation of the case in federal court, and not its state court component, and that the Church could recover fees for litigating the fee petition. The Church filed its fee petition on February 8, 2018, requesting $747,025.00 in attorneys' fees and $10,202.45 in costs. Having reviewed the Church's petition and the City's objections, the Court finds reasonable a reduced award of $234,627.75 in attorneys' fees, with additional fees for the litigation of the fee petition and costs to be determined upon the submission of additional documentation.

**LEGAL STANDARD**

The Court may, in its discretion, award reasonable attorneys' fees to the prevailing party in an RLUIPA action. 42 U.S.C. § 1988(b). In deciding the reasonable award of attorneys' fees, the Court begins by calculating the lodestar amount. *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012). The lodestar amount is calculated by multiplying the hours reasonably expended by the plaintiff's attorneys by their reasonable hourly rates. *Id.* The Court may then adjust the lodestar amount depending on a variety of factors, including the degree of success, the novelty and difficulty of the issues, awards in similar cases, and the relationship between the lodestar amount and the damages awarded. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

**ANALYSIS**

**I.      Lodestar**

**A.      Attorney Billing Rates**

"A reasonable hourly rate is based on the local market rate for the attorney's services," with "[t]he best evidence of the market rate . . . the amount the attorney actually bills for similar work." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). If not available, then the Court "may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Id.* "The fee applicant bears the burden of 'producing satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)). If the fee applicant does not satisfy its evidentiary

burden, then "the district court can independently determine the appropriate rate." *Montanez*, 755 F.3d at 553.

Here, the City does not challenge the Church's requested rates, but the Court nevertheless examines them to determine whether the Church has adequately met its evidentiary burden. The Church has submitted the affidavits of its attorneys, setting forth their experience, but these affidavits alone are not sufficient to establish the market rates. *See Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir.2000) ("[A]n attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services[.]"). It also submits a declaration from Daniel Dalton, another attorney who litigates RLUIPA cases. As another court in this district recently concluded, however, Dalton's declaration has "little value" in establishing that the attorneys' rates in this case are reasonable, particularly in light of the fact that he himself has been awarded much lower rates in RLUIPA cases than he claims in his declaration. *See World Outreach Conference Ctr. v. City of Chicago*, 234 F. Supp. 3d 904, 911 (N.D. Ill. 2017). The Court briefly examines each attorney's requested rate to determine the appropriate hourly rates, taking into consideration rates awarded in similar cases. *See People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1312 (7th Cir. 1996) ("[R]ates awarded in similar cases are clearly evidence of an attorney's market rate.").

### 1.     John W. Mauck

The Church requests $650 per hour for Mr. Mauck's work. The Court, however, finds that the submitted documentation and prior fee awards for Mr. Mauck support a rate of $600 per hour for Mr. Mauck. Most recently, a court in this district found $600 to be a reasonable rate for Mr. Mauck in 2017. *Id.* at 912. Although Mr. Mauck submits in his declaration that he recently billed $750 per hour in representing a limited partnership in its sale of a hotel in Memphis,

Tennessee, that rate has no relevance to determining the reasonable rate for his services in this case or the rate charged by similarly experienced attorneys practicing RLUIPA litigation. *See id.* at 911 (finding Mr. Mauck's tendering of the $750 per hour rate "inapplicable" and "not indicative of a reasonable rate in the relevant community"). Although the Court acknowledges that in setting hourly rates, courts typically use the attorney's current hourly billing rate, *see Pickett*, 813 F.3d at 647, the Court finds no basis for the requested $50 increase from the amount awarded in *World Outreach* and so will use the $600 rate for Mr. Mauck's time.

### 2. Richard C. Baker

The Church requests $500 for Mr. Baker's hourly rate, which the Court finds reasonable. Mr. Baker sets forth his experience in church zoning litigation in his declaration and indicates that, in 2010, a client paid him $550 per hour for reviewing an administrative law claim in litigation pending in New Jersey. The Court finds Mr. Baker's request for a lower rate eight years later reasonable. *See World Outreach*, 234 F. Supp. 3d at 913 (finding $500 per hour rate for Mr. Baker reasonable).

### 3. Noel W. Sterett

The Church requests that Mr. Sterett be compensated at a $500 hourly rate. The Court finds the $400 rate awarded to Mr. Sterett in *World Outreach* reasonable instead. *See id.* at 912–13. Although Mr. Sterett's submitted declaration demonstrates significant experience with RLUIPA litigation, Mr. Sterett does not provide any support for the requested $100 increase from the rate awarded in 2017, and so the Court finds it appropriate to use that previously awarded rate in this case as well.

### 4. Jeffrey M. Schwab

The Church similarly requests $500 per hour for Mr. Schwab's work on this case. Mr. Schwab's involvement with this case ended in September 2014, when he left Mauck & Baker to work at the Liberty Justice Center. Mr. Schwab's level of experience is similar to that of Mr. Sterett, having practiced law for one additional year and generally having significant experience in constitutional litigation, including RLUIPA matters. Mr. Schwab represents that, while at Mauck & Baker, he charged $300 per hour on several client matters, and that in a case he worked on for the Liberty Justice Center, he obtained two declarations opining that, given Mr. Schwab's experience in the First Amendment area, he deserved a $600 per hour rate. Despite these declarations, the Court finds $400 per hour a reasonable rate for Mr. Schwab, given his comparable experience to Mr. Sterett and the similar work the two performed on this case.

### 5. Sorin A. Leahu

The Church requests a $350 hourly rate for Mr. Leahu. Mr. Leahu graduated from law school in January 2014 and began practicing with Mauck & Baker in October 2014, at which time he began working on RLUIPA litigation. He submits that, in a 2014 RLUIPA case, his hourly rate was billed at $300, and in a 2016 case, his hourly rate was billed at $350. A fee petition was not submitted in either case, however, because the parties reached settlements on the attorneys' fee issue. In *World Outreach*, the court found $300 per hour a reasonable rate for work performed by Mauck & Baker associates with more experience than Mr. Leahu. *Id.* at 913 (reducing requested hours for Mauck & Baker associates from $350 to $300). The Court similarly finds that the Church has not appropriately justified awarding Mr. Leahu $350 and instead finds $300 a reasonable rate for his work on this case.

### 6.    Whitman H. Brisky

Mr. Brisky has over forty years of experience as an attorney, litigating various civil rights, tax, commercial, and bankruptcy matters.  It does not appear that he has any prior experience with RLUIPA litigation, however.  Mr. Brisky indicates that his usual, non-contingent hourly rate is $400 and that he charges $500 per hour in contingency cases.  The Church requests $500 per hour for his work on this case.  Mr. Brisky's charged rates are for litigation cases, suggesting that the Court could use this as an established market rate, despite the fact that he does not specifically identify experience with the types of claims raised in this case.  Regardless, his proposed rate appears commensurate with his experience and that charged by other lawyers in his own firm with similar experience.  *See People Who Care*, 90 F.3d at 1312 ("[T]he billing correlation between attorneys in the same firm is likely to be much stronger than that of attorneys who are merely in the same practice region.").  Therefore, the Court finds the requested $500 rate for Mr. Brisky reasonable.

### 7.    Paralegals

The Church requests an hourly rate of $150 for the four paralegals who worked on the case but provides no substantiation for this requested rate.  Courts in this district typically approve a $125 per hour rate for paralegals.  *See Fields v. City of Chicago*, No. 10 C 1168, 2018 WL 253716, at *5 (N.D. Ill. Jan. 1, 2018) (refusing to award $150 per hour for a paralegal where plaintiff did not sufficiently support that request, instead approving rates of $125 and lower for paralegals who worked on the case); *World Outreach*, 234 F. Supp. 3d at 913 (collecting cases).  The Court will similarly use the $125 rate.

## B.      Hours Expended

### 1.      Hours Before Defendants Removed This Case to Federal Court

First, the City argues that the Church should not recover for hours its attorneys and paralegals worked before the City removed this case to federal court.  The parties agreed that the Church's fee petition would not include fees for the state court litigation.  But the Church argues that the fees it seeks for work before the City removed the case to federal court on January 25, 2013 related to the federal claims.  First, the Church contends that the City should compensate it for its initial filing in federal court in December 2010, after which, as the Church admits in its fee petition, it chose to dismiss its federal complaint and litigate under state law because the case was assigned "to a judge which counsel considered unfavorable to the Church's interest."  Doc. 168 at 1.  The Court will not allow recovery for the Church's strategic decision to abandon the federal court litigation in December 2010.  Additionally, the Church seeks to recover fees that it incurred preparing for the filing of the amended complaint that the City then removed to federal court.  Although this work may relate to the federal litigation, the Court finds it appropriate to apply a bright line approach to the parties' agreement, excluding all work done while the case remained in state court.  Therefore, the Court deducts any fees incurred by the Church prior to January 25, 2013, the date that the City removed the case to federal court.  As a result, the Court excludes 6.2 of Mr. Mauck's hours, 4.3 of Mr. Baker's hours, 0.5 of Mr. Brisky's hours, 121.7 of Mr. Schwab's hours, and 4 of Ms. Cunningham's hours from the lodestar calculation.

### 2.      Miscellaneous Church Work

The City next asks the Court to exclude hours that the Church's attorneys spent on work that it argues is not related to this litigation.  For example, the City highlights entries related to a potential scavenger sale in December 2013.  The Church argues that these hours should be

compensated because the work was necessary to calculate damages for the loss of the contract. But the Church does not seek to recover all hours that its attorneys spent assisting the Church to purchase its current property, which occurred during the duration of this litigation, and instead only seeks compensation for a select number of entries related to potential purchases of property, which the Church does not connect to any arguments it made in this case. Therefore, the Court will deduct these hours from the lodestar calculation.[1] Additionally, the Court deducts time entries where the Church's attorneys acted in a general counsel role or undertook non-case related tasks for the Church, such as determining how to publicize the Court's decisions or the resolution of the case. *See World Outreach*, 234 F. Supp. 3d at 915–16 (excluding hours counsel spent on performing tasks unrelated to the litigation, noting that "§ 1988 does not provide for attorney's fees for rights that 'do not arise under the Constitution or federal statutes'" (quoting *Barrow v. Falck*, 977 F.2d 1100, 1104 (7th Cir. 1992))). The Court deducts 3.5 of Mr. Mauck's hours and 8.4 of Mr. Schwab's hours from the lodestar calculation for their miscellaneous work.

### 3. Administrative and Clerical Tasks

The City also asks the Court to deduct time spent on administrative or clerical tasks. The Church cannot recover time spent by its attorneys and paralegals on "tasks that would normally not be billed to a paying client," as well as "on tasks that are easily delegable to non-professional assistance." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999) (quoting *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995)). Therefore, time

---

[1] The City argues that 7.6 hours of Mr. Aguilan's time spent researching PINs for ownership and tax status on July 31 and August 1, 2013 should be excluded as well. *See* Doc. 168-8 at 16. Unlike the other entries related to scavenger sales in December 2013, the research performed by Mr. Aguilan appears to have been related to the Church's damages calculations and to have been used in the drafting of a settlement letter around that time. *See* Doc. 168-8 at 24 (Mr. Schwab's entries from July 31 and August 1, 2013 indicate discussions and review of Mr. Aguilan's work regarding the tax status of property and work related to the City's Rule 68 offer of judgment and the Church's response). As a result, the Court finds these 7.6 hours compensable.

attorneys and paralegals spent "organizing file folders, preparing document[s], copying

documents, assembling filings, electronically filing documents, sending materials, docketing or

'logging' case events into an internal case tracking system, and telephoning court reporters" is

not compensable. *Delgado v. Vill. of Rosemont*, No. 03 C 7050, 2006 WL 3147695, at *2 (N.D.

Ill. Oct. 31, 2006). On the other hand, time paralegals spent on "factual investigation,

conducting legal research, summarizing depositions, checking citations, compiling statistical and

financial data, preparing court documents, serving processes, and discussing the case with

attorneys" is considered "sufficiently complex to justify the efforts of a paralegal." *Id.*

Here, a good portion of the paralegals' time spent on the case involved noncompensable

clerical tasks, such as docketing case events, organizing and scanning documents, and delivering

copies to the Court.[2] The Court finds it appropriate to deduct 11 hours from Mr. Aguilan's

recoverable time and 20.5 hours from Ms. Hills' recoverable time for administrative and clerical

work. Additionally, the Court excludes 0.7 of Mr. Mauck's hours, 1.9 of Mr. Sterett's hours, and

0.1 of Mr. Leahu's hours for time spent on administrative and clerical tasks.

### 4.    Vague Time Entries

The City argues that many of the Church's time entries include only "vague descriptions

of the hours expended," preventing the City and the Court from determining whether the time

was spent on a successful claim or even on this case. Doc. 173 at 6. For example, the City

complains of entries indicating that Mr. Sterett "confer[red] with Atty Schwab regarding legal

issue/research" or another entry concerning communications with the Court about the trial date.

*Id.* at 6–7. These are the only time entries the City identifies as vague, however. The Court

---

[2] In some cases, a compensable task is block-billed with a noncompensable task. For example, Mikaela
Hills, one of the paralegals who worked on the case, often combines time spent reviewing court filings
with docketing dates in the same billing entry. *See, e.g.*, Doc. 168-8 at 53 (entry from June 15, 2016). In
such cases, the Court deducts 0.1 hours from each combined entry for the time spent docketing deadlines
or other case events.

finds Mr. Sterett's highlighted entries sufficient to allow it to determine that the identified tasks were reasonably performed in connection with this case. And having reviewed the billing records in their entirety, the Court will not strike any other entries for vagueness or enforce an across-the-board reduction based on vague entries.

### 5.     Unsuccessful Claims

The City next argues that the Court should exclude time the Church's attorneys spent pursuing unsuccessful claims and damages theories. *See Hensley*, 461 U.S. at 440 ("Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."). Specifically, the City focuses on Mr. Baker's and Ms. Hills' work spent preparing for testimony on the damages the Church claimed it suffered based on a potential tax refund it would have received if it purchased the property. In its rulings on the motions *in limine*, the Court barred the Church from pursuing this damages theory, *see* Doc. 148, but the Church sought reconsideration of the Court's rulings, *see* Doc. 149. The Court did not rule on the Church's motion for reconsideration before the case settled, and the parties did not account for how they arrived at the final settlement amount. Because the Court's ruling was subject to reconsideration at the time of settlement, the Court cannot conclude that the time the Church's attorneys spent pursuing the tax refund theory is patently unreasonable and must be omitted from the lodestar calculation.

### 6.     Unreasonable Hours and Overbilling

Finally, the City argues that the Court should reduce the Church attorneys' time because the case was overstaffed and the attorneys spent an excessive amount of time on internal conferences. With respect to overstaffing, the City objects to Mr. Brisky working on the case,

contending that he did not undertake any actual work on the case and instead only conferenced

with other attorneys who worked on the case. The Court agrees that Mr. Brisky appears to have

acted in a more consultative role as an experienced attorney offering advice on areas of law with

which he may have been more familiar without undertaking serious substantive work. But the

Court finds this time properly compensable, as it was appropriate for the other attorneys at the

firm to consult with Mr. Brisky on areas in which he had more knowledge instead of spending

additional time researching unfamiliar issues themselves. *See Fields*, 2018 WL 253716, at *7

(finding it reasonable for attorney to consult with other attorney experienced in the field and that

both attorneys' time was properly compensable). The City does not specifically object to

overstaffing with respect to other attorneys. And because this case spanned a number of years,

an attorney and paralegal left Mauck & Baker during the course of the litigation, which required

adding new members to the team.

The City also objects to the amount of time the attorneys and paralegals spent in internal

conferences. The Church argues that these conferences were necessary to efficiently manage the

case, claiming that although a good portion of Mr. Mauck's time was spent in meetings, had he

not delegated much of the work, the requested fees would be much higher. Indeed, the Seventh

Circuit has noted that "[t]he practice of law often, indeed usually, involves significant periods of

consultation among counsel" and that "[t]alking through a set of authorities or seeking advice on

a vexing problem is often significantly more efficient than one attorney's trying to wade through

the issue alone." *Tchemkou v. Mukasey*, 517 F.3d 506, 511–12 (7th Cir. 2008). That said,

"internal meetings are not always the model of efficiency," *id.* at 512, and here the Court finds

that the number of internal conferences and the differences in accounting for them among the

various firm members warrants a reduction. The City requests a 25% across-the-board

reduction, but the Court finds it more appropriate to reduce each individual's time by 1%, after having made the other reductions to their hours delineated above.

**C.      Modified Lodestar**

In summary, taking into account the modified rates and above detailed exclusions, the lodestar amount is $335,182.50.  The following tables summarize the Court's calculations:

| | Deductions from Total Hours | | | |
|---|---|---|---|---|
| Attorney/Paralegal | Pre-Federal Court Work | Misc. Church Work | Clerical Work | Excessive Billing |
| John W. Mauck | 6.2 | 3.5 | 0.7 | 14.8 |
| Richard C. Baker | 4.3 | 0 | 0 | 3.6 |
| Noel W. Sterett | 0 | 0 | 1.9 | 29.5 |
| Jeffrey M. Schwab | 121.7 | 8.4 | 0 | 22.2 |
| Sorin A. Leahu | 0 | 0 | 0.1 | 7.5 |
| Whitman H. Brisky | 0.5 | 0 | 0 | 0.3 |
| Mikaela N. Hills | 0 | 0.3 | 20.5 | 26.2 |
| Rene Aguilan | 0 | 0 | 11 | 1.8 |
| Cynthia Cunningham | 4 | 0 | 0 | 0.1 |
| Susan Thomas | 0 | 0 | 0 | 0.1 |
| Total | 136.7 | 12.2 | 34.2 | 106.1 |

| | Modified Lodestar | | |
|---|---|---|---|
| Attorney/Paralegal | Total Hours After Deductions | Modified Rate | Lodestar |
| John W. Mauck | 133.5 | $600 | $80,100 |
| Richard C. Baker | 32.2 | $500 | $16,100 |
| Noel W. Sterett | 265.2 | $400 | $106,080 |
| Jeffrey M. Schwab | 199.3 | $400 | $79,720 |
| Sorin A. Leahu | 67.9 | $300 | $20,370 |
| Whitman H. Brisky | 2.3 | $500 | $1,150 |
| Mikaela N. Hills | 235.9 | $125 | $29,487.50 |
| Rene Aguilan | 16.1 | $125 | $2,012.50 |
| Cynthia Cunningham | 0.5 | $125 | $62.50 |
| Susan Thomas | 0.8 | $125 | $100 |
| Total | | | $335,182.50 |

**II.     Adjustment to the Lodestar**

Having calculated the lodestar amount, the Court must determine whether that amount

should be adjusted upward or downward.  *Hensley*, 461 U.S. at 430 n.3.  Although a number of

facts are considered, "the most critical factor is the degree of success obtained."  *Id.* at 436.  "A

plaintiff who achieves 'excellent results' should receive the entire lodestar, but where 'a plaintiff

has achieved only partial or limited success,' the lodestar 'may be an excessive amount.'"

*Montanez*, 755 F.3d at 556 (quoting *Hensley*, 461 U.S. at 435–36).  The degree of the Church's

success can be measured by considering the amount of the damages obtained compared to the

recovery the Church sought: "[t]he trial judge is in a better position to assess whether the

unsuccessful claims were important or trivial; whether [the] judgment is a spectacular success, a

dismal failure, or something in between; and whether the plaintiff's lawyers would have spent

substantially less time on the case had they been more realistic."  *Id.* at 557; *Anderson v. AB

Painting & Sandblasting Inc.*, 578 F.3d 542, 546 (7th Cir. 2009) ("[A] fee request that dwarfs the

damages award might raise a red flag[.]"); *Spegon*, 175 F.3d at 558 ("[A]lthough the fee award

need not be proportionate to the amount of damages a plaintiff actually recovers, it is a factor

that a court should consider when contemplating a reduction of the modified lodestar amount.").

Here, the Church argues that it achieved excellent results in the case because it prevailed

on its equal terms claim and obtained $176,000 in damages.  The Church further contends that

the Court should enhance the lodestar by 40% because of the time and labor required in the case,

the novelty and difficulty of the issues raised by the case, and the City's allegedly unreasonable

litigation strategy, which made the case more time consuming for all involved.  Additionally, the

Church claims that its attorneys' experience, reputation, and ability warrants further

enhancement of the lodestar.  The Court, however, finds that the lodestar accounts for these

factors, where the rates awarded to the Church's attorneys already reflect the skill of the

Church's attorneys and the hours billed by those attorneys accurately take into account the time

and labor required for the case and the difficulty of the issues raised by the case. *See Perdue v.*

*Kenny A. ex rel. Winn*, 559 U.S. 542, 553, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010) (holding

that the "novelty and complexity of a case" and the "quality of an attorney's performance"

generally should not be used as grounds for enhancement of the lodestar because they are

reflected in the lodestar). The Court also does not find any merit in the Church's suggestion that

an enhancement is warranted for any delay tactics taken by the City, where the Church's

litigation strategy, in first filing in federal court, dismissing its federal claims so as to avoid

litigating in front of the then-assigned judge, and then refiling federal claims several years later

when those state claims failed, can equally be criticized for prolonging the litigation of this case.

Finally, the Church contends without any support that the Court should enhance its award for the

social impact this litigation has had, but if such a factor applied, the Court believes the same

argument could be made in each successful civil rights case. Therefore, the Court does not find

the Church's arguments for enhancement of the lodestar amount persuasive.

On the other hand, the City argues that the Court should significantly reduce the lodestar

amount to account for the Church's minimal success on its claims. The Court agrees that a

reduction is warranted to account for the Church's limited success in this litigation. Despite the

Church's evaluation that it "obtained excellent results," Doc. 168 at 4, the Church obtained only

judicial recognition of the fact that the City's prior ordinance violated RLUIPA's equal terms

provision, essentially a moot issue after the City amended its zoning ordinance in December

2010 to correct that violation. But despite the fact that the City had adopted the amended

ordinance, which effectively prevented the Church from ever operating a place of worship at the

subject property, the Church proceeded with various claims under the prior ordinance and unrealistically valued its potential recovery. Especially in light of the undeveloped caselaw as to whether the Church could even recover damages under a repealed ordinance, *see* Doc. 38 at 12; Doc. 113 at 20–24, and the fact that the Church ultimately found a new home that required few renovations, unlike the property it sought to purchase in Burbank, the Church's planned request for over $1 million at trial in damages for the equal terms violation was an unrealistic valuation of the case. But considered against the Court's rulings on the motions *in limine*, albeit not final, which significantly reduced the Church's damages claims, one could view the Church as succeeding in obtaining the $176,000 settlement plus fees.

Taking these factors into consideration, the Court concludes that an across-the-board reduction of 30% to the lodestar is appropriate. This results in an adjusted total amount of $234,627.75. This final amount recognizes the Church's success on the equal terms claim while taking into account the fact that the Church's attorneys did not have a realistic valuation of the potential damages available in the case.

The parties also agreed that the fee petition would include the Church's fees for litigating the fee petition. The Church estimated that these fees would amount to $15,000 but did not submit any billing records with its motion or reply. The Court orders the Church to submit billing records for these requested fees for the Court's review. The Church should use the billing rates established in this Opinion.

III.     Costs

The Church also requests that the Court approve $10,202.45 in costs. The Church submits a list of its costs but does not include any explanation in its motion as to why these costs are recoverable. The City similarly fails to address the Church's request for costs. This could

15

mean that the parties agree on the amount of fees the Church requests, *see* N.D. Ill. L.R. 54.3(f)

(providing that the fee motion shall be limited to disputed issues between the parties), but the

Court cannot clearly draw this conclusion. Additionally, it is not clear whether the Church seeks

these costs as taxable expenses under 28 U.S.C. § 1920 or as nontaxable litigation expenses

recoverable under 42 U.S.C. § 1988. Therefore, the Court orders the parties to confer within the

next 14 days to resolve any cost disputes. The parties should then submit a statement indicating

the resolution of the cost issue or, to the extent disputes remain, a joint statement and motion

relating to costs, with underlying documentation to support the Church's costs listed in Exhibit I

to its fee petition.

## CONCLUSION

For the foregoing reasons, the Court grants the Church's petition for attorneys' fees [168]

in part. The Court awards the Church $234,627.75 in attorneys' fees. The Church is directed to

submit billing records for the fees incurred in connection with the fee petition by May 16, 2018.

The parties are directed to confer regarding costs and submit a joint statement regarding costs by

May 18, 2018.


Dated: May 2, 2018

                                     SARA L. ELLIS
                                     United States District Judge